JUDGE KRAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS BROWN, Individually And On Behalf of All Others Similarly Situated, | ) ) ) ) **CIVIL ACTION NO.** _____ |
| Plaintiff, | ) ) **07 CIV 7895** |
| vs. | ) ) **CLASS ACTION COMPLAINT** ) **FOR VIOLATIONS OF** ) **FEDERAL SECURITIES LAWS** |
| CHINA SUNERGY CO., LTD., TINGXIU LU, JIANHUA ZHAO, JAMES SHAOFENG QI, GUANGYOU YIN, FENGMING ZHANG, SHILIANG GUO, MERRILL LYNCH, PIERCE, FENNER & SMITH INC., COWEN & CO, LLC. and JEFFERIES & CO., INC, | ) ) ) ) ) ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) ) |

SEP 07 2007
U.S.D.C. S.D. N.Y.
CASHIERS

**NATURE OF THE ACTION**

1.    This is a securities class action on behalf of all persons or entities other than Defendants who acquired the stock of China Sunergy Co., Ltd. ("China Sunergy" or the "Company") pursuant and/or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with the May 17, 2007 initial public offering ("IPO") of 9.775 million American Depositary Shares ("ADS" or "shares") valued at over $107.52 million, seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").[1]

---

[1] 8.5 million shares (representing 51 million ordinary shares) and 1.275 million additional shares issued pursuant to over-subscription options were sold, where each ADS equals 6 ordinary shares. According to the IPO Prospectus, prior to the May 17, 2007 Offering, no public market existed for either China Sunergy ADS or ordinary shares.

1

2.    Defendant China Sunergy is a manufacturer of solar cell products that uses silicon wafers utilizing crystalline silicon solar cell technology to convert sunlight into electricity.    China Sunergy's Prospectus and website claim that it "is a leading manufacturer of solar cell products, as measured by production capacity."    According to the IPO Prospectus, in the years leading up to the May 2007 Offering, China Sunergy was a company that experienced remarkable growth - - growing revenues from a mere $13.75 million at year end 2005, to almost $150 million the following year.

3.    In fact, immediately prior to the IPO, defendants reported that the Company had even turned an operating profit - - a dramatic reversal after reporting losses since the inception of the Company.    According to the IPO Prospectus, net loss attributable to ordinary shares was ($950,000) at year end 2004, ($307,000) at year end 2005, and ($37,212,000) at year end 2006.

4.    Thus, taking advantage of this purported remarkable growth and sudden profitability of the Company, on May 17, 2007, defendants accomplished the IPO of 8.5 million ADS raising approximately $93 million.[2]  Little did investors know, however, the Registration Statement and Prospectus issued in connection with the IPO were materially false and misleading, and failed to disclose that China Sunergy was already having difficulty obtaining sufficient raw materials to achieve its revenue objectives and that, forseeably, this would have a near-term adverse impact on earnings.  The IPO Prospectus - - finalized in the middle of the second quarter of 2007 - - also failed to disclose that China Sunergy would likely face a loss in 2Q:07.

---

[2] Including the 1.275 million shares issued pursuant to the over-subscription option, the Offering raised at least $107.525 million.

5.      As evidence that investors had no knowledge or understanding of these undisclosed supply problems, on the first day of trading after shares were offered at $11.00 each, China Sunergy's stock closed at about $16.50 per share after trading as high as $16.75 - - an increase over debut of more than 45%.

6.      It was only on July 3, 2007 - - approximately six weeks after the IPO - - that China Sunergy shocked investors by issuing a press release announcing preliminary results for 2Q:07 - - the quarter in which the IPO was effectuated - - that were far below guidance.[3]  To investors' shock and alarm, the Company could suddenly not obtain critical supplies necessary for production, and this was causing a material adverse impact on revenues, earnings and profits.

7.      In addition to suddenly admitting to "supply challenges," this release also stated that "the relatively tight supply of polysilicon affected the quality, quantity and delivery of wafers and drove up overall wafer prices in the spot market, resulting in increased pressure on China Sunergy's margins."

8.      Because investors had already been assured that such supply requirements had been secured *prior* to selling almost $110 million of stock to investors only weeks before, this news caused the price of China Sunergy stock to collapse nearly 25% in a single trading day - - from a high of $14.90 on July 2, 2007, to a close of $11.28 the following day.  That day, the trading volume of 3.659 million shares traded far exceeded the Company's near-term average.

9.      As the impact of defendants' belated disclosures resonated in the market, shares of the Company steadily declined - - trading at about $7.50 per share by August

---

[3] When the Company reported results for 2Q:07 on August 24, 2007, actual results were even worse than defendants' July 3, 2007 release originally acknowledged.

23, 2007.  The following day, however, shares traded significantly lower after defendants revealed that the Company's CFO was resigning, after defendants revealed that the Company would lose at least $0.14 per share for 2Q:07, and after analysts reported that China Sunergy would not reach an operating profit until mid-2008.  The following day, August 24, 2007, shares of the Company declined an additional 33% - - falling to below $5.00 per share, on exceptionally heavy trading volume of over 3.757 million shares traded.

10.    In the roughly ten weeks following the IPO, China Sunergy's stock price dropped from a high above $16.70 - - reached on its first day of trading - -  to a low of below $5 per share.  In total, at least $100 million of market capitalization and over 50% of investors IPO investment in the Company was eviscerated.

## JURISDICTION AND VENUE

11.    The claims asserted in this Complaint arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §§77k and 77o].

12.    This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

13.    Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of herein occurred in substantial part in this District and the May 2007 IPO was actively marketed in this District.  Moreover, the Underwriter Defendants are located in this District.

14.    Moreover, because China Sunergy is a foreign or "alien" corporation that does significant business in this District, it may properly be sued in any District of the

4

United States, including the Southern District of New York, pursuant to Federal Rule of Civil Procedure 28 U.S.C. §1391(d).

15.    In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the Nasdaq Stock Market ("Nasdaq"), a national securities exchange.

## PARTIES

### Plaintiff

16.    Plaintiff **THOMAS BROWN** purchased China Sunergy stock, as set forth in the certification attached to this Complaint and incorporated herein by reference, pursuant and/or traceable to the Company's May 17, 2007 IPO, and was damaged thereby.

### Corporate Defendant

17.    Defendant **CHINA SUNERGY** is incorporated in the Cayman Islands with principal executive offices located at No. 123 Focheng West Road, Jiangning Economic & Technical Development Zone, Nanjing, Jiangsu 211100, People's Republic of China.

### Individual Defendants

18.    The individuals identified as defendants in subparagraphs (a) - (f) below, are referred to collectively herein as the "Individual Defendants."    The Individual Defendants are each liable for the false statements contained in the materially false and misleading Registration Statement and joint Prospectus, as alleged herein, as those

statements were "group-published" information.  The Individual Defendants include the following:

(a)    Defendant **TINGXIU LU** ("Lu") is, and at all relevant times has been, Chairman of the Board of Directors and Chief Executive Officer of the Company. Defendant Lu signed the Registration Statement issued in connection with the May 17, 2007 IPO.  On July 27, 2007, defendant Lu was replaced as CEO of the Company, but has retained a position as Executive Chairman of China Sunergy.

(b)    Defendant **JIANHUA ZHAO** ("Zhao") is, and at all relevant times was, President, Vice Chairman of the Board of Directors, and Chief Scientist of the Company.  Defendant Zhao signed the materially false and misleading Registration Statement issued in connection with the May 17, 2007 IPO.

(c)    Defendant **JAMES SHAOFENG QI** ("Qi") was, at all relevant times, Chief Financial Officer of the Company.  Defendant Qi signed the materially false and misleading Registration Statement issued in connection with the May 17, 2007 IPO. Effective August 28, 2007, defendant Qi resigned from his position with the Company.

(d)    Defendant **GUANGYOU YIN** ("Yin") is, and at all relevant times was, Vice President – Operations and a member of the Board of Directors of the Company.  Defendant Yin signed the materially false and misleading Registration Statement issued in connection with the May 17, 2007 IPO.

(e)    Defendant **FENGMING ZHANG** ("Zhang") is, and at all relevant times was, Vice President – Manufacturing and a member of the Board of Directors of the Company.  Defendant Zhang signed the materially false and misleading Registration Statement issued in connection with the May 17, 2007 IPO.

(f)     Defendant **SHILIANG GUO** ("Guo") was, at all relevant times, a member of the Board of Directors of the Company.  Defendant Guo signed the materially false and misleading Registration Statement issued in connection with the May 2007 IPO. Effective July 27, 2007, defendant Guo resigned as Director of the Company.

**IPO Underwriter Defendants**

19.     In connection with the May 2007 IPO, investment banks **MERRILL LYNCH, PIERCE, FENNER & SMITH INC**. ("Merrill Lynch"), **COWEN & CO, LLC**. ("Cowen"), and **JEFFERIES & CO., INC** ("Jefferies"), acted as "Lead Underwriters" of the Offering --distributing 8.5 million shares of China Sunergy stock to investors and initiating the first public market for China Sunergy shares-- and distributed an additional 1,275,000 shares upon exercise of the Underwriters' over-subscription allotment option.  The Underwriter Defendants are each liable for the false statements contained in the materially false and misleading Registration Statement and Prospectus, as alleged herein, as those statements were "group-published" information.

20.     Excluding the oversubscription allotment of an additional 1,275,000 shares, the distribution of the China Sunergy shares awarded Underwriter Defendants in the IPO, identified below, occurred as follows:

| Underwriters | Number of ADSs |
|---|---|
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | 5,950,000 |
| Cowen and Company, LLC | 1,275,000 |
| Jefferies & Company, Inc. | 1,275,000 |
| Total | 8,500,000 |

21.     In connection with the May 2007 IPO, the Underwriter Defendants were paid over $7.5 million in gross fees - - paid indirectly by purchasers of the Company's shares.  The Underwriter Defendants were paid at least $0.77 per share in connection

with the sale of the 9.775 million shares, including shares sold pursuant to the exercise of the Underwriter's over-subscription option, as follows:

| | Per ADS | Without Option | With Option |
|---|---|---|---|
| Public offering price | $11.00 | $93,500,000 | $107,525,000 |
| Underwriting discount | $.77 | $6,545,000 | $7,526,750 |

22.    Shareholders were willing to, and did, pay over $7.5 million in combined fees to compensate the Underwriter Defendants for conducting a purported significant "due diligence" investigation into China Sunergy in connection with the IPO.    The Underwriter Defendants' due diligence investigation was a critical component of the IPO, and was supposed to provide investors with important safeguards and protections.

23.    The due diligence investigation that was required by the Underwriter Defendants included a detailed investigation into China Sunergy sales, production, inventories, controls, and procedures, and it also required that defendants test the assumptions and verify the projections adopted or ratified by defendants, to the extent a reasonable investor with access to such confidential corporate information would.    A reasonable due diligence investigation would have extended well beyond a mere casual investigation into the Company's operations and its financial reporting and operational and production controls.    The failure of the Underwriter Defendants to conduct an adequate due diligence investigation was a substantial contributing factor leading to the harm complained of herein.

24.    In addition to the foregoing, because of the Underwriter Defendants' and Individual Defendants' positions with the Company, they each had access to the adverse undisclosed information about China Sunergy's business, operations, products,

operational trends, financial statements, markets, and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

25.    In addition to the Underwriter Defendants, the Individual Defendants, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels, and were privy to confidential proprietary information concerning the Company and its business, production operations, inventory and raw materials management, sales expectations, and financial guidance, as alleged herein. The Individual Defendants were also involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, and approved or ratified these statements, in violation of the federal securities laws.

26.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, traded on Nasdaq, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's

publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions made in connection with the issuance of common stock in May 2007 violated these specific requirements and obligations.

27.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

## RELEVANT THIRD PARTY

28.     **Donald J. Puglisi**, Managing Director of Puglisi & Associates, is named herein as a relevant third party.  Donald J. Puglisi is identified and designated in the IPO Prospectus as the Authorized U.S. Representative of the Company.[4]

## MATERIALLY FALSE & MISLEADING STATEMENTS IN THE REGISTRATION STATEMENT AND PROSPECTUS

29.     China Sunergy is based in China and commenced business operations in 2004.  The Company manufactures solar cell products and sells them to Chinese and overseas module manufacturers and system integrators, who assemble solar cells into solar modules and solar power systems for use in various markets.  In solar system

---

[4] On information and belief, Puglisi & Associates is located at 850 Library Avenue, Suite 204 Newark, Delaware 19711.

manufacturing, raw silicon materials are purified and formed into ingots which are then cut into very thin slices of silicon wafers. The wafers are made into solar cells which are then interconnected and encapsulated and framed into solar modules. The solar modules are distributed by wholesalers and retailers for installation in solar power systems.

30.    According to the IPO Prospectus, in the years leading up to the May 2007 Offering, China Sunergy was a company that experienced remarkable growth - - growing revenues from a mere $13.75 million at year end 2005, to almost $150 million the following year.  In fact, immediately prior to the IPO, defendants reported that the Company had even turned an operating profit - - a dramatic reversal after reporting a loss of over 37.21 million at year end 2006.

31.    Thus, it was an effort to take advantage of this purported remarkable growth and sudden profitability of the Company when, on May 4, 2007 and May 14, 2007, defendants filed Forms F-1/A which amended China Sunergy's IPO Registration Statement previously filed with the SEC on April, 25, 2007.  As late as May 14, 2007, defendants continued to predict that China Sunergy shares would be offered to the public at a price to be between $8.00 and $10.00 per ADS.

32.    On May 17, 2007, the Prospectus with respect to the IPO, which forms part of the Registration Statement, became effective and defendants sold 8.5 million shares of China Sunergy stock to the public for gross proceeds of $93.5 million.  Each ADS was offered at $11.00 per share - - over 37.5% above the bottom of the range estimated only days before.

33.    The Prospectus issued in connection with the May 2007 IPO portrayed China Sunergy as an experienced manufacturer and a leader in the production of solar

cell products that was continuing to see strong demand and significant growth opportunities. As evidence of this, the IPO Prospectus stated, in part, the following:

> **We are a leading manufacturer of solar cell products in China as measured by production capacity.** We sell our solar cell products mostly to module manufacturers and, to a lesser extent, to system integrators, who assemble our cells into solar modules and solar power systems for use in various markets.
>
> \*   \*   \*
>
> **Our management's operational expertise and execution capability, coupled with our strong research and development capabilities, have allowed us to rapidly install our solar cell manufacturing lines and expand our manufacturing capacity**. As of December 2006, we had six solar cell manufacturing lines with an aggregate production capacity of 192 MW[5] per year, assuming the use of 156-millimeter monocrystalline silicon wafers. We plan to increase our aggregate production capacity of solar cells to approximately 390 MW per year by the second quarter of 2008, with twelve manufacturing lines in total, four of which will be capable of producing both P-type and N-type solar cells. **Our research and development efforts focus on continually enhancing our solar cell conversion efficiencies, which measure the ability of solar power products to convert sunlight into electricity, and improving our manufacturing operations**. We are currently developing selective emitter cells, an improved version of the P-type solar cells that most solar cell manufacturers produce..... **In addition, we are focusing on the development of advanced process technologies for manufacturing new products**, such as N-type solar cells, which generally have higher conversion efficiencies than those of P-type solar cells. We also plan to develop passivated emitter and rear cells in the future.
>
> **We have experienced significant sales and revenue growth since we began commercial shipment of our solar cell products in August 2005**. We sold 4.4 MW and 46.4 MW of solar cells in 2005 and 2006, respectively. ***Our net revenues increased from $13.7 million in 2005 to $149.5 million in 2006. We turned a net loss of $0.3 million in 2005 into a net income of $11.8 million in 2006.*** [Emphasis added.]

34.    While China Sunergy's Prospectus did acknowledge that obtaining silicon raw materials was crucial to the success of the Company, and that it was sometimes

---

[5] The Company's annual manufacturing capacity is measured in megawatts ("MW"), where one MW is approximately sufficient to power 1,000 homes for one day.

difficult to obtain silicon because of "tight supply," the Prospectus also stated that recent availability had improved compared to the year ago period, and that the Company had *already* taken sufficient measures to guarantee a supply of raw materials to meet near-term foreseeable demand.  In fact, rather than admit that the Company was having any supply difficulties at the time of the May 17, 2007 IPO, defendants instead stated that existing relationships with established solar power industry participants were competitive advantages possessed by the Company at the time of the IPO, and that China Sunergy already had supply agreements in place that would reasonably assure that production capacity could be met for all of 2007 and for at least three-quarters of 2008.

35.     As further evidence that the Company was able to meet its raw materials and production supply requirements, the Prospectus also stated that China Sunergy had a diverse supply chain and had flexibility in procuring raw materials as a result of its purported unique manufacturing processes.   In this regard, the Prospectus stated, in pertinent part, the following:

> Silicon wafers are the most important raw materials for producing solar cells, with monocrystalline and multicrystalline silicon wafers as the most commonly used materials. **We can produce solar cells with either of these types of silicon wafers, and this dual capability provides us with flexibility in raw material procurement.**
>
> **We seek to procure silicon wafers from various suppliers, including manufacturers and trading companies, most of which are located in China. In addition, we procure polysilicon, silicon ingots and other silicon-based raw materials throughout the various segments of the supply chain**, and outsource the production of silicon wafers from these raw materials under toll manufacturing arrangements with third parties. **In order to meet a portion of our raw material requirements, we also enter into buy-and-sell arrangements with some of our customers, under which we secure silicon wafers from some of our customers, and sell solar cells to them in return.**

**We are in the process of entering into more long-term supply contracts. As of the date of this prospectus, we have entered into supply contracts and framework agreements with established silicon raw material manufacturers in China**, such as Jiangsu Zhong Neng PV-Tech Development Co., Ltd. and Wuxi Zhong Cai Science and Technology Co., Ltd., and several other suppliers. *We believe the silicon raw material supplies under these contracts and framework agreements will be sufficient to support our planned production of approximately 110 MW of solar cells in 2007.* **To hedge against future fluctuations of silicon raw materials prices, the pricing terms under our framework agreements are to be further negotiated.**

\* \* \*

Under their direction, our research and development capabilities have enabled us to increase the conversion efficiencies of our products, improve the efficiency of our manufacturing processes and develop and commercialize new solar cell products. Our advanced process technologies allowed us to produce solar cells using silicon wafers with thickness of 200 microns as early as in March 2006, when we believe the solar cell industry in China was still dominated by solar cells made from 240 microns or thicker wafers. **Our leading initiative in reducing cell thickness has effectively reduced our use of silicon raw materials.** We believe that we will be able to produce solar cells using thinner wafers of 180 or 160 microns by the end of 2007. *Our research and development efforts and manufacturing expertise also enable us to manufacture solar cells using a wide variety of silicon wafers, including refined low-grade and off-specification silicon wafers, providing us with flexibility in raw material procurement.* [Emphasis added.]

36.    In addition to the foregoing, the Prospectus further stated that defendants had, by the time of the IPO, *already* diversified the Company's raw materials sourcing, and had already procured sufficient raw materials to meet near-term production requirements through establishing relationships with industry participants, as follows:

**Existing Relationships with Established Solar Power Industry Participants**

**We have an established network of relationships with a variety of upstream and downstream participants in the solar power industry which enhance our ability to manage our operations.** *We source our raw materials, including silicon wafers and other silicon-based raw materials, through various agreements with major manufacturers and*

14

*trading companies. We also secure silicon wafers from some of our customers, and sell solar cells to them in return. These buy-and-sell arrangements not only ensure a portion of our raw material supplies and mitigate the risk of raw material price increases, but also strengthen our collaborative relationships with customers.* We also procure polysilicon, silicon ingots and other silicon-based raw materials from various suppliers, and outsource the production of silicon wafers from these raw materials under toll manufacturing arrangements with third parties. *Our diversified sourcing strategy provides us with the flexibility to effectively manage our raw material supply chain. As of the date of this prospectus, we have entered into contracts and framework agreements for sufficient silicon raw material supplies to support our planned production of approximately 110 MW of solar cells in 2007, and we have also entered into contracts and framework agreements for silicon raw material supplies to support approximately 75% of our planned production capacity of approximately 210 MW of solar cells in 2008….* [Emphasis added.]

37.    The Prospectus also represented how China Sunergy would achieve its goal of being a "global leader in the innovation, development and manufacture of solar cells." These strategies included **"further optimiz[ing] raw material supply sources and enhanc[ing] business relationships with key material suppliers."** In this regard, the Prospectus stated, in pertinent part, the following:

**To further address future fluctuations in silicon raw material supplies, we will continue to pursue a diversified and flexible procurement program to limit our reliance on or overexposure to any particular supply source**. We will continue to purchase a range of raw materials, including silicon wafers, silicon ingots and polysilicon in order to secure cost-effective supply channels and minimize the unit cost of raw materials. **In addition, we are seeking to build strategic alliances with additional polysilicon producers and wafer suppliers to further secure long-term raw material supplies.** *Beginning in 2007, we have implemented a strategy to procure more raw material supplies with consistent quality from our selected major suppliers for each of our manufacturing lines.* Through optimizing our supply sources, we expect to save the costs that result from adjusting our manufacturing processes for raw materials sourced from different channels and **to improve the stability of the quality of the incoming raw material and our output. We will also continue our buy-and-sell arrangements with some customers to satisfy part of the raw material demand for our expanded production capacity.** Further, we will seek to enter into supply

15

agreements of varying lengths in order to minimize the risks associated with fluctuations in raw material prices. In the long run, *we believe a balanced mix of long-term and short-term supply agreements will provide us access to stable and cost-effective sources of silicon raw materials with consistent quality to support our growth plan*. We will also build up our international procurement network by establishing offices in Japan and Germany. [Emphasis added.]

38.    In fact, at the time of the IPO, the Company purported to be so successful at raw material procurement and production management that, during 1Q:07 - - the last reported quarter prior to the IPO - - defendants claimed that China Sunergy was able to sell excess raw materials inventories as a refined means of managing working capital.  As evidence of this, the China Synergy IPO Prospectus also stated, in part, the following:

> As part of our working capital management, we reduced our inventory level by selling silicon raw materials, and generated US$7.1 million of net revenues from such sales in the three months ended March 31, 2007. *This was a one-time arrangement and we do not expect to engage in additional such sales in the near future.*[6] [Emphasis added.]

39.    The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state facts necessary to make the statements contained therein not materially false and misleading.  In fact, as investors later learned, the true but undisclosed adverse facts about China Sunergy that existed at the time of the May 17, 2007 IPO included, in part, the following:

(a)    At the time of the IPO, the Company did not possess sufficient quantities of silicon raw materials to meet immediate, near-term production requirements, such that China Sunergy could not even meet production demands for 2Q:07 - - the exact quarter in which the Company went public and sold over $107 million in common stock in the public market to investors;

---

[6] $7.1 million in net revenues during 1Q:07 amounted to approximately 12.2% of the $58.235 million recorded during that quarter.

(b)    Prior to the IPO, as a means of propping up the Company's already sagging sales and revenues, defendants had sold over $7.1 million in needed silicon raw materials, which had the short-term effect of inflating sales, revenues and earnings in 1Q:07 - - the quarter immediately prior to the offering - -  but which created production shortages during 2Q:07 - - the quarter in which the Company went public;

(c)    At the time of the IPO, the Company was not operating according to plan; the sales of raw materials in 1Q:07 that led to shortages in 2Q:07 were made for the purposes of inflating results and, at the time of the Offering, defendants were *already* experiencing problems such that it was foreseeable that the Company could not achieve guidance sponsored and endorsed by defendants - - and such that it would be impossible to meet expectations for 2Q:07;

(d)    At the time of the IPO, China Sunergy did not maintain an adequate system of controls or procedures, and the Company did not maintain the most minimum standards of good Corporate Governance or controls and procedures, as is required by the SEC and the Company's own internal guidelines and standards of business conduct;

(e)    At the time of the May 17, 2007 Offering, defendants had *not* conducted an adequate due diligence investigation into China Sunergy that would have revealed many of the issues and deficiencies complained of herein - - that would foreseeably have prevented the sale of this Company to shareholders through the public equity markets at that time, or at the inflated price at which these shares were originally sold; and

(f)     At the time of the May 2007 IPO, as a result of raw material shortages, as well as the lack of demand for China Sunergy products, the Company was not operating according to plan such that guidance sponsored or endorsed by defendants was not true, accurate, or reliable and such that it was not reasonable or based on the facts that were known to, or recklessly disregarded by, defendants at that time.

40.    As evidence that investors did not know, and could not know, the undisclosed adverse conditions within the Company at the time of the IPO, shares of the Company were issued at $11.00 per share and on the first day of trading, May 17, 2007, China Sunergy's stock opened at $12 per share and surged nearly 51% over its IPO price closing at $16.56 per share - - on extremely heaving trading volume of over 12.43 million shares traded.  Remarkably, demand for China Sunergy was so strong that over 150% of the total IPO float traded hands in the single trading day.

### The True Financial and Operational Condition of China Sunergy is Belatedly Disclosed

41.    On July 3, 2007, defendants surprised and alarmed investors after China Sunergy issued a press release announcing its preliminary sales and production volume figures for the second quarter of 2007.  The Company estimated quarterly solar cell shipments of approximately 19.0 MW and announced a production target for 2Q:07 that would imply an annual production range of only 95 MW - - materially lower than the 110 MW planned production represented in the Prospectus.

42.    The same day, July 3, 2007, the *Associated Press* reported on the Company's production warning and stated, in part, the following:

> Shares of China Sunergy Co. Ltd., a specialized solar cell manufacturer, plunged more than 15 percent Tuesday as short supplies of polysilicon cut into second-quarter margins.

The company said that the Chinese solar market continued to experience a tight supply of polysilicon during the quarter, which hurt the quantity and delivery of wafers, driving up prices in the spot market.

During the second quarter, China Sunergy produced 20.1 megawatts of solar cells. Although this was a 93 percent increase from the year-ago period, the number was virtually flat compared to the first quarter.

The efficiency rate of monocrystalline 125-millimeter cells, which account for 85 percent of production and 88 percent of total sales, also remained flat at 15.9 percent compared to the first quarter.

CIBC World Markets analyst Jeff Osborne said in a note to clients last week that he expects polysilicon supply and demand to even out in 2009.

The company said it expects to increase wafer supply for the second half of 2007 and 2008 by using new suppliers and expanding purchases from existing ones.

China Sunergy reported it entered into supply agreements during June with LDK Solar Co., Konca Solar Cell Company Ltd. and Changzhou Xiandai Communications Optic Fiber Co.

43.    The July 3, 2007 press release that initially revealed China Sunergy's second quarter disappointment quoted Defendant Lu as stating:  "As a result of the *new* supply agreements reached during the second quarter, we are *now* confident that we will be able to secure our wafer supply requirements for the second half of 2007 and 2008." This statement directly contradicted China Sunergy's claims in its Registration Statement and Prospectus that it had *already* contracted for sufficient raw materials for 2007 and part of 2008.

44.    In response to defendants' belated disclosures that the Company could not obtain sufficient raw silicon materials to meet production demand, and that demand was flat and not increasing as previously stated,  the price of China Sunergy stock collapsed nearly 20% in a single trading day - - trading from a high of $14.90 on July 2, 2007, to a

close of $11.28 the following day.  Moreover, trading volume of 3.659 million shares traded far exceeded the Company's near-term average trading volume.

45.    By July 5, 2007, the *Associated Press* further reported that China Sunergy shares continued to slide following the belated disclosure of its 2Q:07 margins warning. In addition, at that time, *AP* also quoted Jefferies & Co. analyst Jeffrey Bencik, who initiated coverage of China Sunergy with a "Neutral" rating and a price target of $12.50 per share.  Remarkably, the analyst at the same brokerage house that co-managed the China Sunergy IPO only weeks before had suddenly concluded that the Company needed to prove it has a steady supply of polysilicon, and that he would avoid aggressive accumulation of Company shares until China Synergy could "demonstrate[] that its silicon wafer suppliers can meet China Sunergy's aggressive ramping plans."  Again, these were the same plans that defendants had endorsed only weeks before when taking over $100 million from U.S. investors in the public markets.

46.    At the end of July 2007, shares of the Company continued to trade lower after China Sunergy was forced to realign its management structure.  Thus, on July 27, 2007, China Sunergy issued a press release announcing that defendant Lu was replaced as CEO but remained on the board as Executive Chairman.  This release also announced that Defendant Guo would be stepping down as a member of the Board of Directors of the Company, with immediate effect.

47.    As the impact of defendants' belated disclosures resonated in the market, shares of the Company steadily declined - - trading to about $7.50 per share by August 23, 2007.  The following day, however, shares would trade significantly lower after it was reported that defendant Qi, the Company's CFO, was resigning, after it was revealed

that the Company had lost at least $0.14 per share for 2Q:07, and after analysts reported

that China Sunergy would not reach an operating profit until mid-2008. Accordingly, on

August 24, 2007, shares of the Company declined an additional 33% - - falling to below

$5.00 per share on very heavy trading volume of over 3.757 million shares traded.

48.    As shares of the Company again declined, that day, August 24, 2007, the

*Associated Press* reported, in part, the following:

> China Sunergy swings to 2nd-quarter loss on polysilicon supply challenges
>
> China Sunergy Co. Ltd., a solar cell maker, said Friday it swung to a second-quarter loss, as tight polysilicon supply, soaring expenses and falling prices hurt results.
>
> Shares plunged $1.45, or 19.5 percent, to $6 in premarket electronic trading.
>
> ***For the three months ended June 30, the company posted a loss of $3.8 million, or 14 cents per share***, compared with a profit of $1.6 million, or 9 cents per share, in the second quarter of 2006.
>
> Revenue doubled to $56.2 million, from $28 million in the year-ago period.
>
> The cost of goods sold more than doubled to $53.5 million, compared with $24.6 million in the prior-year period. Operating expenses leaped fourfold to $4.4 million, from $965,000 in the comparable 2006 period.
>
> ***Analysts were expecting a profit of 2 cents per share on revenue of $56.5 million, according to a poll by Thomson Financial.***
>
> The company said it expects tight polysilicon supply to continue at least through 2008. In response, it has scaled back 2008 capacity expansion from an addition of six production lines to four. [Emphasis added.]

49.    Thus, in the roughly ten weeks following the IPO, China Sunergy's stock

price dropped from a high above $16.70 - - reached on its first day of trading - -  to a low

of below $5.00 per share. Moreover, although the Prospectus became effective when the

second quarter was more than half way over, it made no disclosure that the Company was losing money and facing earnings nearly $9 million less than the previous quarter - - resulting in a loss of $0.14 per share for 2Q:07.

50.    Moreover, the following trading day, August 27, 2007, as shares languished at approximately $5.00, defendants filed China Sunergy's quarterly report for 2Q:07, pursuant to Form 6-K, that adjusted downward predicted annual shipments to the range of 78 to 83 MW - -  about 20 MW less than predicted on July 3, and falling well short of the 110 MW that defendants had forecast in China Sunergy's Prospectus.  Again defendants stated that raw material constraints were limiting production.  According to the 2Q:07 Form 6-K, second quarter shipments also had been overestimated in the July press release, and actual solar sale shipments reported in the Company's 6-K were only 15.8 MW - - a 17% discrepancy compared to the earlier estimate.

51.    Despite the solar market's purported "tight supply of polysilicon" to blame for China Sunergy's losses, and contrary to the Company's Prospectus statement that it did not intend to engage in raw material sales in the near future, the 6-K reported that China Sunergy again boosted revenues and sales by selling at least $14.4 million of polysilicon in the second quarter - - notwithstanding a gross margin on polysilicon sales of 1.5%, down from 25.4% the previous quarter.[7]

**CAUSATION AND ECONOMIC LOSS**

52.    In connection with the April 17, 2007 China Sunergy IPO, defendants signed a materially false and misleading Registration Statement, and filed with the SEC and made available to shareholders a materially false and misleading Prospectus.  These

---

[7] Polysilicon sales of at least $14.4 million reported by defendants in 2Q:07 amounted to over 25.6% of the $56.2 million in total revenues reported in that quarter.

filings were essential in allowing defendants to complete the IPO of almost 10 million China Sunergy shares and raise over $107 million, and to create a public market for trading in Company stock immediately thereafter.

53.    On July 3, 2007 - - only three weeks after the IPO - - when defendants' prior misrepresentations and illegal and improper conduct began to be revealed to investors, shares of China Sunergy declined precipitously - - evidence that the prior artificial inflation in the price of Company shares was eradicated.   As a result of their purchases of China Sunergy stock in connection with the IPO, including those who purchase shares traceable to the Offering in the public markets immediately thereafter, plaintiff and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

54.    By improperly characterizing the Company's operational and financial condition, and misrepresenting its prospects at the time of the IPO, defendants presented a misleading image of China Sunergy's business and future growth prospects.  Within the IPO Prospectus and Registration Statement, defendants repeatedly emphasized the ability of the Company to procure raw materials from diverse sources and supplies, and to manage production and inventory so as to meet ever-increasing demand for Company products, and to sustain the profitable course that China Sunergy had charted prior to the May 2007 Offering.  These claims caused and maintained the artificial inflation in China Sunergy stock that began from the first day of trading when China Sunergy shares traded up over 50%, and that continued thereafter until the truth about the Company was ultimately revealed to investors.

55.    Beginning on July 3, 2007, however, as investors learned the truth about the Company and learned that defendants could not operate the Company according to plan and could not obtain sufficient raw materials to meet demand, or that demand was also shrinking for China Sunergy products such that second quarter 2006 results were *already* adversely impacted *prior* to the Offering, shares of the Company collapsed. Defendants' belated disclosures had an immediate, adverse impact on the price of China Sunergy shares.

56.    These belated revelations also evidenced defendants' prior misrepresentation of China Sunergy's business prospects due to defendants' false statements. As investors and the market ultimately learned, the Company's prior business prospects had been overstated as were the Company's results of operations. As this adverse information became known to investors, the prior artificial inflation was immediately eliminated from China Sunergy's share price, and shareholders were damaged as a result of this related share price decline.

57.    As a direct result of investors learning the truth about the Company, on July 3, 2007, China Sunergy's stock price nearly 20% in a single trading day - - trading from a high of $14.90 on July 2, 2007, to a close of $11.28 the following day - - on very heavy trading volume of over 3.659 million shares, almost ten times the Company's near-term average trading volume. Moreover, following the reorganization of senior management, including the unscheduled resignation of the Company's CFO, shares of China Sunergy continued to trade lower, reaching a low of about $7.50 per share by August 23, 2007.

58.    Shares declined an additional 33% to below $5.00 per share on August 24, 2007, again on heavy trading volume of over 3.757 million shares traded, after defendants revealed that they would fall materially short of the recently revised earnings and revenue estimates.  In fact, by the time defendants belatedly disclosed results for 2Q:07 - - the period in which the IPO occurred - - the Company would not earn the $0.02 per share analysts consensus estimate but would instead lose $0.14 per share as costs soared and production and demand for China Sunergy products declined.

59.    This dramatic share price decline eradicated much of the artificial inflation from China Sunergy share price, causing real economic loss to investors who purchased this stock in, or in connection with, the China Sunergy IPO.

60.    The economic loss, *i.e.* damages suffered by plaintiff and other members of the Class, was a direct result of defendants' misrepresentations and omissions being revealed to investors, and the subsequent significant decline in the value of the Company's shares was also the direct result of defendants' prior misstatements and omissions being revealed.   These losses are also reflected by the dramatic decline in the price of China Sunergy stock, evidenced by the chart below:



## CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23 (b)(3) on behalf of itself and all persons other than defendants who purchased the common stock of China Sunergy pursuant and/or traceable to the Company's IPO on or about May 17, 2007.   Excluded from the Class are defendants herein, members of the immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

62.    The members of the Class are so numerous that joinder of all members is impracticable. China Sunergy stock was actively traded on the Nasdaq. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified

from records maintained by China Sunergy or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

63.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

64.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

65.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the defendants' acts alleged herein violated the 1933 Act;

(b)    whether the defendants' statements to the investing public in the Registration Statement and Prospectus misrepresented material facts about the business, operations, and management of China Sunergy; and

(c)    to what extent the members of the Class have sustained damages; and the proper measure of such damages.

66.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of

the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I

**For Violations of Section 11 of the Securities Act of 1933**
**(Against All Defendants)**

67.    Plaintiff repeats and realleges each and every allegation contained above.

68.    This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

69.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

70.    China Sunergy is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

71.    As issuer of the shares, China Sunergy is strictly liable to plaintiff and the Class for the misstatements and omissions.

72.    None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

73.    By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

74.    Plaintiff acquired China Sunergy shares pursuant to the Registration Statement for the IPO.

75.    Plaintiff and the Class have sustained damages. The value of China Sunergy stock has declined substantially subsequent to and due to defendants' violations.

76.    At the time of their purchases of China Sunergy shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to July 3, 2007. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### For Violations of Section 15 of the Securities Act of 1933
### (Against the Individual Defendants)

77.    Plaintiff repeats and realleges each and every allegation contained above.

78.    This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants.

79.    Each of the Individual Defendants was a control person of China Sunergy by virtue of his or her position as a director and/or senior officer China Sunergy. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of China Sunergy.

80.    Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment as follows:

A.    Determining that this action is a proper class action and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees an expert fees;

D.    Awarding rescission or a recissory measure of damages; and

E.    Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: September 7, 2007

*Kim E. Miller*

Kim E. Miller
**KAHN GAUTHIER SWICK, LLC**
12 East 41th Street – 12 Floor

New York, NY  10017
Telephone: (212) 696 - 3730
Facsimile:  (504) 455-1498

- and -

Lewis Kahn
**KAHN GAUTHIER SWICK, LLC**
650 Poydras Street - Suite 2150
New Orleans, LA  70130
Telephone: (504) 455-1400
Facsimile:  (504) 455-1498

**Attorneys for Plaintiff & the Class**

Eric J. O'Bell (La Bar# 26693)
**LAW OFFICES OF ERIC J. O'BELL, LLC**
3500 North Hullen Street
Metairie, Louisiana 70002
504-456-8677
504-456-8624(Fax)
ejo@obelllawfirm.com

**Additional Counsel**

## CERTIFICATION IN SUPPORT OF APPLICATION FOR LEAD PLAINTIFF

_Thomas Brown_ (name) ("plaintiff") declares, as to the claims asserted under the federal securities law, that:

1.  Plaintiff has fully reviewed the facts of the complaint(s) filed in this action alleging violations of the securities laws and plaintiff is willing to serve as a lead plaintiff in this case and all other related cases that may be consolidated with it.

2.  Plaintiff did not purchase securities of China Sunergy Co. Ltd. at the direction of counsel or in order to participate in a private action under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  During the Class Period, plaintiff has executed transactions in the securities of China Sunergy Co. Ltd. as follows. See Attached Schedule.

5.  In the last three years, plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6.  Plaintiff will not accept payment for serving as a lead plaintiff beyond its _pro rata_ share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: _09  13  07_, 2007

_____
Plaintiff